STATE EX REL. WEINGART and another, Respondents, vs. BOARD OF OFFICERS OF THE CENTRAL SOCIETY OR GRAND COUNCIL OF THE GEGENSEITIGE UNTERSTUETZUNGS GESELLSCHAFT GERMANIA and others, Appellants.

*December 9, 1910—January 10, 1911.*

*Corporations: Officers: Wrongful removal: Remedies:* Mandamus: *By-laws: Trial of officers on charges: Procedure: Suspension: Reinstatement: Costs.*

1. Where the governing body of an assessment insurance corporation was large and met but once in two years and in the meantime the entire management was vested in the officers, and some of such officers arbitrarily and unlawfully excluded others from performing their duties, the latter were entitled to relief by *mandamus* to redress the wrong done not only to themselves but to the members at large of the corporation, although the financial interest of the excluded officers was so small and uncertain as not, in itself, to furnish a sufficient basis for such relief.

2. The general rule is that in such a case all remedies provided by the rules of the corporation, by appeal or otherwise, should be exhausted before resort is had to the courts; but such rule is not applicable where the proceedings for removal of the officers are void or where an appeal would be wholly fruitless.

3. *Mandamus*, not *certiorari*, is the proper remedy in such a case.

4. Where the laws of an assessment insurance society provide that every officer against whom charges have been preferred "shall have a just and impartial trial in accord with the laws and rules of this body," such officer is entitled at least to be advised of the charges and given an opportunity to be heard, even though there are no specific regulations governing the procedure.

5. A law of such a society providing that every officer against whom charges have been preferred "shall be suspended from his office until the case is decided," etc., must be given a reasonable construction, and in this case is *held* not to refer to fugitive charges made by an individual on his own responsibility, but only to charges formulated and presented by some local council or other authoritative body after investigation; since otherwise the society might be without any officers for long periods.

6. Officers of an assessment insurance society having acted arbitrarily and without jurisdiction in excluding other officers, costs were properly awarded against them personally, upon the granting of a peremptory writ of *mandamus* directing reinstatement of the excluded officers.

APPEAL from a judgment of the circuit court for Milwaukee county: JAMES O'NEILL, Judge. *Affirmed*.

The "Gegenseitige Unterstuctzungs Gesellschaft Germania" is a Wisconsin corporation organized under ch. 86, Stats. (1898), for the purpose of furnishing life insurance to its members on the assessment plan. The highest authority in the corporation appears to be the "Central Society" or the "Grand Council," which consists of all charter members of the corporation and the officers thereof and one member from each subordinate council. This council meets biennially and elects the general officers of the corporation, consisting of a president, vice-president, secretary, treasurer, speaker, guide, guard, and three trustees, who hold their offices for two years and have the active management and control of the affairs of the corporation when the Grand Council is not in session. The organization has some fifty-odd subordinate councils in the state with a membership of over 5,000. The relators, *Korn* and *Weingart,* were members of said society, and at the biennial meeting of the Central Society or Grand Council held in August, 1908, *Korn* was elected "guard" and *Weingart* was elected to the office of "guide" for the term of two years. Each of said officers qualified and entered upon the duties of his office and continued to act as an officer until March 17, 1909. At a meeting held on that day, at which

neither *Weingart* nor *Korn* was present, the president announced that he had suspended *Weingart* and *Korn* because of complaints being filed against them in the subordinate councils to which they belonged. The action of the president was unanimously approved by the eight officers present. The president then stated that complaints had been presented to him by several "vereins" stating that each of the relators had conducted himself in an unworthy manner in certain stated particulars, in consequence whereof he recommended that they be removed from office. This recommendation was approved and the relators were expelled by the unanimous vote of the eight remaining officers, and the secretary was instructed to notify them of the action taken. Neither of the officers so removed was notified that any charges had been filed against him and neither was given any opportunity to be heard. Complaints were filed against *Korn* with the subordinate society to which he belonged, about March 17, 1909, by members of four different subordinate societies, and like complaints were filed against *Weingart* with the society to which be belonged, by members of three other societies, between March 13th and 18th. These complaints were investigated by the local societies with which they were filed and were held to be groundless as to both of the relators. Such conclusions were reached as early as March 25th. Some of the individual members of these local societies either appealed or attempted to appeal from the decisions so made. In addition to the foregoing, complaints were filed against *Weingart* with the president of the Central Society by members of two subordinate societies, and against *Korn* by members of three such societies. These complaints were not acted upon by the officers of the Central Society, aside from the action taken on March 17th, which has been set forth.

On March 19th and again on April 14th the relators attended meetings of the officers of the Central Society and demanded reinstatement, which demand was in each instance

refused.   The relators sued out a writ of *mandamus* directed
to the officers of the Central Society who had ousted them
from office, and demanded as relief that they be reinstated in
their respective offices.   Judgment in accordance with the
prayer of the petition was rendered on February 23, 1910,
and a personal judgment for costs was rendered against the
eight officers who were named as defendants, from which
judgment they prosecute this appeal.

*Louis G. Bohmrich,* for the appellants.

For the respondents there was a brief by *Quarles, Spence
& Quarles, Walter H. Bender,* and *Moritz Wittig,* attorneys,
and *J. V. Quarles, Jr.,* of counsel, and oral argument by
*J. V. Quarles, Jr.*

BARNES, J.   The appellants urge that the judgment should
be reversed on the following grounds: (1) Relief will not be
granted by *mandamus* because no property rights are involved.
(2) The relators should have exhausted their remedy by ap-
peal to the Grand Council of the society before resorting to
the courts.   (3) If there was a remedy in the courts, *cer-
tiorari* proceedings should have been resorted to.   (4) Relief
should not be granted, because the relators had a full and fair
trial as provided by the rules of the society.   (5) The re-
lators became suspended from office *ipso facto* as soon as
charges were filed against them, and the subsequent removal
worked no injury.   (6) The appellants acted in good faith,
and hence it was error to award a personal judgment against
them for costs.

1. The financial interest of the relators was trifling and
dependent on contingencies that might not happen.   We
think it was of too vague and shadowy a character to furnish
a sufficient basis for the remedy pursued.   It does not follow,
however, that because no money was involved the action might
not be maintained.   The governing body of the society was
large and met but once in two years.   In the meantime the

entire management of the affairs of the corporation was
vested in the officers.   It was the duty of each individual of-
ficer to use his best endeavors to promote the welfare of the
corporation and to perform the duties of his particular office.
By so doing he was carrying out a trust that was reposed in
him by the central body of the society.   If he was unlawfully
excluded from office he could not execute that trust.   By re-
maining silent he might well be subjected to just animadver-
sion for failing to assert his rights, and such failure might
well operate to the detriment of the corporation.   The cor-
poration itself is a creature of the laws of this state, and the
power of our courts to prevent abuses in corporate manage-
ment is very broad.   *State ex rel. Cuppel v. Milwaukee C.
of C.* 47 Wis. 670, 679, 680, 3 N. W. 760.   ,Where some of
the officers of a corporation arbitrarily and unlawfully ex-
clude others and prohibit them from performing their func-
tions, it would seem reasonable that those excluded should
have some speedy and adequate remedy to redress the wrong
done, not only to themselves, but to the members at large of
the corporation, particularly where the corporation itself
could not afford relief in the premises.   The weight of au-
thority supports this view and it seems to be more consonant
with reason than the contrary one.   *Rex v. Barker,* 3 Burr.
1265; *Lewis v. Whittle,* 77 Va. 415; *Fuller v. Trustees, etc.*
6 Conn. 532; *Lahiff v. St. Joseph's T. A. & B. Soc.* 76 Conn.
648; *Strong, Petitioner, etc.* 20 Pick. 484; *Conlin v. Ald-
rich,* 98 Mass. 557; *Burt v. Grand Lodge, etc.* 66 Mich. 85;
Merrill, Mandamus, § 49.

2. Under the rules of the society the relators might have
prosecuted an appeal from the order of expulsion to the
Grand Council, and it is urged that it was incumbent on them
to exhaust all remedies provided by the society, by appeal or
otherwise, before resorting to the courts.   There is no doubt
that such is the general rule.   1 Bacon, Ben. Soc. § 108 and
cases cited; 20 Cyc. 201, 204, and cases cited.   There are,

however, well recognized exceptions to this rule. Where the proceedings for removal are void, resort may be had to the courts without first exhausting the remedies by appeal within the organization. *Langnecker v. Trustees, etc.* 111 Wis. 279, 87 N. W. 293; *People ex rel. Keefe v. Women's C. O. of F.* 162 Ill. 78, 83, 44 N. E. 401; *People ex rel. Deverell v. Musical Mut. P. Union,* 118 N. Y. 101, 23 N. E. 129; Bacon, Ben. Soc. § 107; *Hall v. Supreme Lodge, etc.* 24 Fed. 450; *Mulroy v. Supreme Lodge, etc.* 28 Mo. App. 463; *Blumenfeldt v. Korschuck,* 43 Ill. App. 434; *State ex rel. Cuppel v. Milwaukee C. of C.* 47 Wis. 670, 682, 683, 3 N. W. 760. We entertain no doubt whatever that the removal proceedings were void in the instant case. There is still another reason why the relators were not obliged to appeal. The appeal could not possibly be heard before their terms of office would expire. The alleged remedy would therefore be no remedy at all, because it would afford no relief. A fruitless appeal need not be taken as a condition precedent to seeking redress in the courts. *Brown v. Supreme Court I. O. of F.* 176 N. Y. 132, 68 N. E. 145; *State ex rel. Schrempp v. Grand Lodge, etc.* 70 Mo. App. 456, 465; Bacon, Ben. Soc. § 107.

3. There is practically no conflict in the authorities in holding that if a right existed at all to proceed in the courts, *mandamus* was the proper remedy.

4. That the relators did not have an impartial trial is too plain to admit of controversy. Sec. 1 of law 5 of the society provided that an officer of the Central Society might be removed by a three-fourths vote of the officers present, for neglect of his official duties or unworthy behavior. Sec. 3 of said law 5 provided that every officer against whom charges have been preferred "shall have a just and impartial trial in accord with the laws and rules of this body." No method of procedure was provided for, but the accused were entitled to a "just and impartial trial." This could only mean that they must be informed of the nature of the charges against

·522   SUPREME COURT OF WISCONSIN.   [Jan..

State ex rel. Weingart v. Board, etc. G. U. G. Germania, 144 Wis. 516.

them and be given an opportunity to be heard.   The action taken was an arbitrary star chamber proceeding, which could not, even by courtesy, be said to have the semblance of a trial,. much less a fair or impartial one.   The mere fact that no specific regulations were adopted governing the mode of procedure could make no difference.   None were necessary.   If the appellants desired to place the relators on trial, they could do so only by advising them of the charges made and giving them a reasonable chance to be heard.   *Wuerfler v. Trustees,. etc.* 116 Wis. 19, 92 N. W. 433.

5. Sec. 3 of law 5 above referred to also provided that every officer against whom charges have been preferred "shall be suspended from his office until the case is decided, unless. the society orders otherwise by three-fourths majority of the members present."   It is argued that under this law the relators were rightfully suspended from office at the time this. proceeding was begun.   The charges filed with the subordinate councils against the relators had been investigated and found groundless, and the appellants were advised of that fact before suit was begun.   There were on file some charges made by individual members of the society in an informal way,. which had not been disposed of when the suit was started. This law must have some reasonable construction that will permit the society to carry on its business if possible.   All is. not peace and harmony and brotherly love at all times, even in benevolent associations.   They have their cliques, their factions, and their disagreements as well as other organizations, and necessarily so because they are composed of mortals.   These internal disputes frequently become acrimonious. and engender much ill feeling.   Now, if the construction contended for by the appellants is correct, any one of the 5,300· members of the society could, immediately after the adjournment of the Grand Council, file charges against all of the officers, and they would thereupon be suspended and the society would be without officers for the ensuing two years.   The

rule referred to was not intended to place the society in any such predicament as this.    So we think the charges therein referred to do not mean fugitive charges made by some individual on his own responsibility, but charges formulated and presented by some local council or other authoritative body, after investigation.    In other words, the charges must be the result of fair preliminary investigation and must have passed the scrutiny of some one besides the individual who prefers them and must be of sufficient dignity to warrant suspension, before they can operate to suspend an officer from exercising his functions of office.    Indeed, it would seem that if the rule were not susceptible of such a construction it might be held void for unreasonableness.    *Golden Star Lodge v. Watterson,* 158 Mich. 696, 123 N. W. 610.

6. The appellants having acted arbitrarily and without jurisdiction, costs were properly taxed against them.    *State ex rel. Wunderlich v. Kalkofen,* 134 Wis. 74, 113 N. W. 1091; *State ex rel. School Dist. v. Wolfrom,* 25 Wis. 468.

*By the Court.*—Judgment affirmed.